UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN STEEL & STAIRWAYS, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>LEXINGTON INSURANCE COMPANY, et al.,<br><br>　　　　　Defendants. | Case No. 12-cv-03103-JST<br><br>**ORDER DENYING MOTION TO BIFURCATE AND STAY BAD FAITH CLAIMS**<br><br>Re: ECF No. 73 |

## I.   INTRODUCTION

Plaintiffs American Steel & Stairways Inc., Martin Vollrath, and Thomas Vollrath (collectively "American Steel") filed a complaint against Defendants Lexington Insurance Company ("Lexington") and Insurance Company of the State of Pennsylvania ("ISOP") (collectively, "Defendants") for breach of contract and insurance bad faith, because Defendants did not defend Plaintiffs against construction defect lawsuits.  Complaint for Damages, Equitable Subrogation, Contribution and Indemnity ("Complaint"), Exh. A to Defendants' Joint Notice of Removal, ECF No. 1.  Defendants have filed a motion to bifurcate the two claims for the purposes of discovery and trial, and to stay the bad faith claims pending resolution of the breach of contract claim.  Defendants Lexington Insurance Company's and Insurance Company of the State of Pennsylvania's Notice of Motion and Motion to Bifurcate and Stay Plaintiffs' Bad Faith Claims ("Motion"), ECF No. 73.  Having considered the papers, and good cause appearing, the Court hereby DENIES the motion.

## II.   BACKGROUND

### A.   Factual Background and Procedural History

This case arises out of a construction defect lawsuit filed in San Mateo Superior Court in

October 2008. Exh. A to Motion, at ¶ 7. Plaintiffs in that case alleged that "water intrusion and other damage began to occur . . . as a result of various construction deficiencies." Id. The defendant general contractor in that case filed a cross-complaint against American Steel and other subcontractors, seeking indemnity and defense in the lawsuit. Exh. B to Motion. American Steel alleges it had insurance policies under three different carriers, Steadfast Insurance Company ("Steadfast"), ISOP and Lexington. Complaint, at ¶ 4, 5 & 14.[1]

During litigation, Plaintiffs allege that a $1.5 million settlement demand was proffered, but expired when Lexington and ISOP refused to contribute. Complaint, at ¶ 25.[2] Subsequently, a new settlement demand of $1.75 million was made. Id., at ¶ 40. Steadfast agreed to pay its full $1 million policy as well as $500,000 in excess of that limit. Lexington and ISOP refused to contribute the remaining $250,000 unless Steadfast waived its rights of contribution against them, which Steadfast did not agree to do. Id., at ¶ 44, 46. Plaintiffs borrowed $250,000 to fund the settlement and settled the underlying case.[3] Id., at ¶ 47.

In April 2012, Plaintiffs sued Lexington and ISOP for breach of contract and bad faith in San Mateo Superior Court. Complaint. Defendants contend that the insurance policy Lexington issued to American Steel provides coverage for property damage that took place between April 27, 2001 and April 27, 2002. Motion, at 2:17-21. Lexington argues that there was no evidence that the underlying lawsuit presented a potentially covered claim under the policy, given that the lawsuit alleged property damage after the project was completed in October 2002. Id. Defendants claim that the ISOP policy held by Plaintiffs was an excess liability policy, which only applied after the issuer of the underlying coverage, Steadfast, had paid or was held liable to pay the full amount of its limit. Id., at 2:21-26. Defendants removed this case to Federal Court in June 2012.

---

[1] Plaintiff originally sued Chartis Claims, Inc. as well, but the Court dismissed that party as a defendant. ECF No. 51.

[2] The remainder of the facts in this paragraph are drawn from Plaintiff's complaint. In deciding this procedural motion, the Court does not assume or decide the truth of any of these allegations, and describes them only to provide the background of the underlying action.

[3] Plaintiffs borrowed money from Steadfast, who assigned its rights of contribution against Lexington and ISOP to American Steel.

Notice of Removal.

Defendants filed a motion to bifurcate, for purposes of discovery and trial, the breach of contract and the bad faith claims pursuant to Rule 42(b) of Federal Rules of Civil Procedure. Motion. Defendants have also moved to stay the bad faith claim pending a determination of whether the Defendants breached their coverage contracts. Id.

### B. Legal Standard

Rule 42(b) empowers courts to bifurcate a trial for any one of the following reasons: (1) "convenience"; (2) "to avoid prejudice"; or (3) "to expedite and economize." Fed. R. Civ. P. 42(b). A district court is given "broad discretion" to determine whether bifurcation is appropriate. Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002). The U.S. Constitution limits this discretion, in that a court may not bifurcate a trial in a way which interferes with a defendant's Seventh Amendment right to a trial by jury. Danjaq LLC v. Sony Corp., 263 F.3d 942, 961-62 (9th Cir. 2001).

### C. Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1332, federal district courts have jurisdiction over matters where the amount in controversy exceeds $75,000 and the parties are citizens of different states. Plaintiffs in this case are seeking $250,000. It is uncontested that Plaintiffs are citizens of California, while Lexington is a citizen of Delaware and Massachusetts and ISOP a citizen of Delaware and New York.

### III. ANALYSIS

The Court considers each of the Rule 42(b) factors in turn.

### A. Potential Prejudice

Defendants contend that if the issues of breach of contract and bad faith are tried together they will be prejudiced in presenting their defense. First, they argue that there may be a risk of jury confusion, since jurors must differentiate the two claims. Second, they argue that a joint trial will complicate their ability to present evidence of their conditional offer to pay $250,000 toward a settlement. Defendants claim this fact helps to establish that they did not act in bad faith, but is likely to be taken by jurors as an admission of coverage if the claims are joined in one trial.

Obviously, any trial involving more than one related claim presents at least some risk of jury confusion. But the Court does not believe that Defendants will be unduly prejudiced by either jury confusion or evidence of a settlement offer if these two claims are tried together. The risk of jury confusion, if any, can be addressed by specific jury instructions and a special verdict form. Clear limiting instructions will allow the jury to differentiate evidence related to coverage liability and evidence related to damages for bad faith. This Court is not persuaded that potential prejudice to the Defendants cannot be cured in this way, and the Court will not bifurcate the claims because of a mere possibility of prejudice. "Rule 42(b) merely *allows*, but does not require, a trial court to bifurcate cases 'in the furtherance of convenience or to avoid prejudice.'" Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004) (emphasis in original) (holding that trial court did not abuse its discretion in declining to bifurcate claims because it issued "appropriate instructions" making it clear to the jury the differences in the claims and evidentiary standards).[4]

**B.   Judicial Efficiency and Convenience**

Defendants next argue that the two claims should be bifurcated for reasons of judicial efficiency. Under California law, a cause of action for bad faith cannot be maintained unless it is first established that coverage exists. Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 36 (1995). Therefore, if it is determined that American Steel is not covered by any Defendants' insurance policies, the second claim of bad faith will be moot.

The Court does not believe that bifurcation of the breach of contract and bad faith claims will significantly further the Court's interest in efficient resolution of this litigation. Some limited efficiency will be achieved if it turns out that Plaintiffs are unable to demonstrate coverage under the policy, but there will be substantial inconvenience to the Court and jurors if the claims are bifurcated and Plaintiffs prevail on the first claim. Undoubtedly, some of the individuals whose

---

[4] The Court recognizes that the *Plaintiffs* would not ordinarily be permitted to offer Defendants' settlement offer as proof of liability. See Fed. R. Evid. 408. However, this is not what is occurring here. Rather, *Defendants* are potentially submitting this evidence to defend against a claim of bad faith and the Court could provide instructions to the jury to only consider the settlement offer only for that purpose.

testimony is relevant to the coverage claim will also have relevant testimony regarding the bad faith claim. It makes little sense to require those witnesses to testify twice, when once would be sufficient. In addition, the two claims are not wholly distinct from each other, and bifurcation would likely lead to unnecessary repetition in evidence and arguments. Therefore, the Court finds bifurcation unwarranted for the purpose of either trial or discovery. See Hangarter, 373 F.3d at 1021 (holding that it was not an abuse of discretion for the district court to deny bifurcation and to instead try issues of compensatory and punitive damages together).

## C.  Staying Bad Faith Claims

Since the Court will denying the motion to bifurcate, the request to stay one claim is also denied.

## IV.  CONCLUSION

For the reasons stated above, the Court DENIES Defendants' motion to bifurcate claims and stay Plaintiffs' bad faith claims.

**IT IS SO ORDERED**.

Dated: August 14, 2013

_____
JON S. TIGAR
United States District Judge

5